**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO. 15-24308-CIV-LENARD/GOODMAN

| | |
|---|---|
| JOSEPH LUIS DE JESUS JR, and all others similarly situated under 29 U.S.C. 216(b), | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| YACHTING PROMOTIONS, INC., and ROBERT COREAS, | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' RESPONSE OPPOSING PLAINTIFF'S
PARTIAL MOTION FOR SUMMARY JUDGMENT**

Defendants, YACHTING PROMOTIONS, INC. ("Yachting Promotions") and ROBERT CORREA[1] ("Correa") (collectively "Defendants"), pursuant to Rule 56, Federal Rules of Civil Procedure, oppose Plaintiff Joseph Luis de Jesus, Jr.'s ("Plaintiff") Motion for Partial Summary Judgment (D.E. 72) ("Motion"), and as grounds state:

**I.   SUMMARY**

Plaintiff's Motion fails because the undisputed facts show that (1) Plaintiff's unpaid overtime claim under the Fair Labor Standards Act ("FLSA")[2] fails as a matter of law because Yachting Promotions properly paid Plaintiff's overtime under the fluctuating workweek method of calculating overtime pay ("FWW" or "fluctuating workweek method") and (2) Correa was not Plaintiff's employer under the FLSA.  The Court should deny Plaintiff's Motion, and grant Defendants' pending motion for final summary judgment.

---

[1] Robert Correa incorrectly is identified by Plaintiff as "Robert Coreas."
[2] Plaintiff voluntarily dismissed a retaliatory discharge claim (D.E. 69).

## II.    RESPONSE TO STATEMENT OF MATERIAL FACTS

Defendants' summary judgment motion (Dkt. 74) demonstrated that the material facts are undisputed and Defendants are entitled to judgment as a matter of law.  Plaintiff's Motion does not change this result or present any new facts or evidence. The bulk of the alleged "facts" in Plaintiff's Motion are irrelevant legal conclusions or, often, mischaracterizations of the testimony and other evidence.

Defendants respond to Plaintiff's specific statement of material facts as follows:

1.    Defendants agree that Plaintiff worked for Yachting Promotions at boat shows held domestically and abroad, including at South Florida facilities, and performed duties to set up and tear down the boat shows.

2.    Defendants agree that Yachting Promotions grosses in excess of $500,000.00 per-year.

3.    Plaintiff's characterization of the testimony in the 30(b)(6) deposition concerning how the fluctuating workweek method worked is not relevant to whether Plaintiff understood that his fixed salary covered all hours worked in each workweek.   See D.E. 74 arguing application of the FLSA standard.

4.    Whether or not any other employee of Yachting Promotions understood and is able to explain the fluctuating workweek method is not relevant to whether Plaintiff had the required understanding.

5.    Defendants dispute that Plaintiff has evidence that he was not aware that he was paid under the fluctuating workweek method. Plaintiff testified that Correa told him he would be put on salary. (Deposition of Joseph Luis de Jesus, Jr. ("Pl. Dep."), pp. 142:14-143:15, 157:3-6, 354:7-356:4) (excerpts attached as **Exhibit A**).   Additionally, Plaintiff wrote on the first

paycheck he received with a salary the word "salary" next to the number $620.00. (*See* Compilation of Plaintiff's Paychecks, p.1, attached as **Exhibit B**).

6.       Defendants agree that Plaintiff never signed any paperwork that explained the fluctuating workweek method.  The FLSA does not require signed paperwork to pay under the fluctuating workweek method, and no such requirement was cited by Plaintiff.

7.       Plaintiff's Motion is mistaken that his paychecks did not enumerate hours and pay amounts.  Each of Plaintiff's paychecks separately listed his base salary of $620.00 (later raised to $638.60) and how much he was paid in overtime for each pay period.  (Compilation of Plaintiff's Paychecks, **Exhibit B**).  Plaintiff never asked his supervisors to explain the fluctuating workweek method to him. Plaintiff merely asked Correa to be returned to an hourly pay method when he realized that his higher fixed salary income affected his eligibility for government benefits. (Pl. Dep. pp. 157:22-159:11).  During his deposition, Plaintiff admitted that he could calculate how he was paid since his paycheck and time records were available to him. (Pl. Dep. p. 143:5-15).

8.       Plaintiff has no evidence to support the self-serving assertion that he lacked a mutual understanding of the fluctuating workweek method or what the salary was intended to compensate.  Plaintiff knew that his salary covered all hours worked, no matter how many hours he worked. (Pl. Dep. pp. 141:14-21; 153:21-23).

9.       Plaintiff has no evidence to support the self-serving assertion that he never had an understanding of how his salary compensated him or the fluctuating workweek method.  Just the opposite, Plaintiff testified that he knew that his salary covered all hours worked, no matter how many hours he worked. (Pl. Dep. pp. 141:14-21; 153:21-23).

10.     Plaintiff has no evidence to support the self-serving assertion that there was no mutual agreement as to a straight-salary compensating any specific number of expected weekly hours. Again, Plaintiff testified that he knew that his salary covered all hours worked, no matter how many hours he worked. (Pl. Dep. pp. 141:14-21; 153:21-23).

11.     Plaintiff failed to support his assertion that his salary was docked if he worked less than 40 hours after being on salary, for hours missed with permission of the company. Plaintiff cited only his own contentions in his deposition but did not provide a single paycheck or other evidence to show that his pay was, in fact, docked.  All paychecks clearly evidence that his salary was never docked.  Plaintiff always received his salary of $620.00, which was later raised to $638.60, plus his half time rate for any overtime. (*See* Compilation of Plaintiff's Paychecks, **Exhibit B**).

12.     Plaintiff failed to establish that he did not agree to the salary. In fact, Plaintiff readily admits that he agreed to his promotion to a salaried position and only later asked to be switched back to an hourly rate when he realized that a higher income affected his eligibility for government benefits. (Pl. Dep. pp. 157:22-159:11).

13.     Whether an additional per diem rate applied to dates on which there were Boat Shows is irrelevant to Plaintiff's claims.

14.     Whether about one-third of the days of the year there is a boat show to which the per diem rate applies entirely is irrelevant to Plaintiff's claims.

15.     Plaintiff cannot in good faith claim that he did not even know he would be getting paid a salary and that he simply started receiving paychecks that reflected he was salaried without notice. Plaintiff testified that Correa told him he would be put on salary but that he did not know in which week this change would take effect. (Pl. Dep. pp. 142:14-143:15, 157:3-6,

4

354:7-356:4).  Additionally, on his first paycheck he received with a salary, he wrote the word "salary" next to the number $620.00. (*See* Compilation of Plaintiff's Paychecks, p.1, **Exhibit B**).

16.    Plaintiff cannot support his assertion that, after not receiving an explanation of how the fluctuating workweek method worked and during the first six months of being on salary, Plaintiff complained about inaccuracies in his paycheck to HR Representatives of Yachting Promotions because he did not know how his pay worked and also did not get an explanation. In fact, Plaintiff testified that he agreed to his promotion to a salaried position and later asked Correa to be switched back to an hourly rate when he realized that a higher income affected his eligibility for government benefits. (Pl. Dep. pp. 157:22-159:11).

17.    Defendants dispute that Plaintiff went to Gilberto Bobillo ("Bobillo"), his supervisor, and complained about not agreeing to the salary compensating him at a fixed amount regardless of the hours he worked per week and not understanding how his overtime was calculated. (Deposition of Gilberto Bobillo ("Bobillo Dep.") pp. 6:16-18 (excerpts attached as **Exhibit C**)).  However, even if this happened, it would not change the fact that Plaintiff's pay method was lawful under the FLSA.

18.    Plaintiff misstates the conversation he had with Correa over six months after he had been put on salary. Plaintiff asked to be put back on an hourly pay method when he realized that a higher income affected his eligibility for government benefits. (Pl. Dep. pp. 157:22-159:11).

19.    Defendants agree that Plaintiff went to Correa to talk about his pay on one occasion.

20.    Defendants dispute that Plaintiff went to Correa more than one time to ask about and complain about the FWW and his lack of understanding and agreement. (Deposition of

Robert Correa as Corporate Representative ("Corp. Rep. Dep."), pp. 20:6-9) (excerpts attached as **Exhibit D**)).  Again, Plaintiff testified that he knew that his salary covered all hours worked, no matter how many hours he worked. (Pl. Dep. pp. 141:14-21; 153:21-23).

21.     Plaintiff is mistaken and lacks proof when he states that Defendants failed to add overtime on his first salary check and he complained to Correa. Plaintiff was paid the $620.00 salary but also was paid his regular hourly rate for the first forty (40) hours worked as well as overtime paid at one and a half times his regular hourly rate for all hours over forty (40) that week. Plaintiff received two paychecks for that week. (*See* Pay Composite from 12/6/13, attached as **Exhibit E,** and Time and Pay Summary for that week, attached as **Exhibit F**).

22.     It entirely is irrelevant whether Yachting Promotions has a formal or informal human resources department.

23.     Plaintiff mischaracterizes Correa's Corporate Representative deposition testimony. Correa testified that the Yachting Promotions' Board of Directors, not Correa, had sole authority to make decisions as to Plaintiff's wages (Corp. Rep. Dep. pp. 4:25-5:1).

24.     It is irrelevant for Plaintiff's claims whether the Department Supervisors reported to Correa.

25.     It is irrelevant for Plaintiff's claims whether Correa controls budget allocations to supervisors.

26.     Defendants dispute that Correa manages Yachting Promotions' entire operation with respect to the movement of freight and equipment and the complete build-out of the shows, or that Plaintiff established as much. Plaintiff cites to no evidence that this freight and equipment movement involves detailed planning including scheduling every department and employee and controlling the work of approximately 255 employees. Plaintiff mischaracterizes what Correa

said in his individual deposition. Correa testified that he has control over the total amount of man-hours for a project but not with regards to the scheduling of employees who are not under his direct supervision, which includes Plaintiff.   (Deposition of Robert Correa, Individually ("Correa Dep."), pp. 22:16-23:1) (excerpts attached as **Exhibit G**)).

27.     Defendants agree that Correa recommended Plaintiff's promotion and payment under the FWW. However, Correa specifically testified that he did not make the final decision, and that Yachting Promotions' Board of Directors, not Correa, had sole authority to make decisions as to Plaintiff's and other employees' wages and a promotion to a salaried position. (Corp. Rep. Dep. pp. 6:22-7:6).

28.     Defendants agree that Correa had control over the number of hours employees worked on boat shows, which were approximately one-third the days of the year. However, this statement is vague and was mischaracterized by Plaintiff.   Correa only testified that he had control over the total amount of man-hours for a project but not with regards to the scheduling of employees who are not under his direct supervision, which includes Plaintiff.   (Correa Dep. pp. 22:16-23:1).

29.     Defendants agree that Correa was Plaintiff's direct supervisor for between eight months and one year. However, this was prior to the promotion to a salaried position. (Correa Dep. p. 7:20-25).

30.     Defendants agree that, after Bobillo became Plaintiff's supervisor, Correa still supervised the Plaintiff's work every show, and show days were at least one-third of the year.

31.     It is irrelevant to the claim that no one that Plaintiff had contact with, meaning at the facility, outranked Correa, the individual Defendant, and that Correa supervised all of the department heads in his department.

32.     Plaintiff did not cite to any evidence besides his mistaken testimony that, after Plaintiff was salaried, he never worked under forty (40) hours in a week. Yachting Promotions' time and pay records show that out of the 101 weeks that Plaintiff received a salary, he worked less than 40 hours in 27 weeks and still was paid his full salary. (*See* Verified Summary, attached as **Exhibit H**).

33.     It is irrelevant to any of Plaintiff's claims whether Correa promoted Bobillo, Plaintiff's supervisor, to the position of supervisor.

34.     Defendants agree that Correa's decisions about putting employees on salary has been overruled by the board more than once, but the fact is irrelevant to this claim.

35.     Defendants agree that Bobillo, Plaintiff's supervisor when not reporting to Correa, reports to Correa.

36.     Plaintiff mischaracterized Bobillo's testimony that he does not know who is in charge of Human Resources. Bobillo testified that he does not know who oversees the HR department. (Bobillo Dep. pp. 9:24-10:12). Where the HR department is located also is irrelevant to Plaintiff's claims.

37.     It is not relevant to any claims or defenses what amount of time Correa spent overseeing matters at the facility where Plaintiff worked and whether or not he spent time at the corporate warehouse.

38.     It is not relevant to Plaintiff's claims that the Boat Show Season is nine months long, how long the off-season is, or whether or not there were boat shows during the off season as well. The only relevant question is whether Plaintiff's hours fluctuated, which they did.  (*See* Verified Summary, **Exhibit H**).

## III.   ADDITIONAL STATEMENT OF MATERIAL FACTS

39.   Plaintiff began working for Yachting Promotions as an hourly warehouse employee on or about October 11, 2011 (D.E. 1, ¶9; Corp. Rep. Dep. pp. 4:20-5:21).

40.   Approximately two (2) years into his employment, Plaintiff was promoted to a salaried position with benefits where he continued to work as a warehouse employee and "traveled to the individual boat shows . . . within the State of Florida . . . and outside the country" until his employment ended on or about November 5, 2015 (Pl. Dep. pp. 21:1-19, 129:14-25; Corp. Rep. Dep. pp. 5:4-6:21).

41.   While working for Yachting Promotions, Plaintiff regularly was paid a fixed salary of $620.00 per week (later raised to $638.60) that did not vary with the number of hours he worked during the workweek. (Pl. Dep. pp. 141:7-142:22, 188:6-19).

42.   To ensure accuracy, Yachting Promotions used the "Coefficient Table for Computing a Half-Time for Overtime" provided by the U.S. Department of Labor ("DOL") to calculate Plaintiff's overtime payments (DOL Coefficient Table for Computing a Half-Time for Overtime, attached as **Exhibit I**).

43.   The Compilation of Plaintiff's Paychecks, which Plaintiff verified at his deposition, show that his salary was sufficiently high enough to ensure that his earnings from the salary never fell below the FLSA's minimum wage rate in any workweek (Pl. Dep. pp. 17:22-18:16, 109:11-110:20, 141:7-144:13, 152:16-154:12; Compilation of Plaintiff's Paychecks, **Exhibit B**).

44.   Plaintiff's hours fluctuated from week to week (Pl. Dep. pp. 214:17-215:1; Compilation of Plaintiff's Paychecks, **Exhibit B**). While Plaintiff worked more than 40 hours in

some weeks, he worked no overtime or even less than 40 hours in others (Pl. Dep. pp. 214:17-22).

45.     Plaintiff was responsible for accurately recording his hours, which he did through a time clock (Pl. Dep. p. 236:1-7).

46.     Plaintiff concedes that all the hours he worked were properly recorded while he worked at Yachting Promotions (Pl. Dep. p. 215:2-5).

47.     Plaintiff and Yachting Promotions shared a clear mutual understanding that Plaintiff's salary covered all hours worked during the workweek, regardless of the number. Plaintiff was aware that the method of calculating his wages changed after he was promoted to a salaried position, he knew the way in which his overtime compensation was calculated changed, and he continued to report to work and accept paychecks from Yachting Promotions (Pl. Dep. pp. 142:14-143:15, 157:3-6, 354:7-356:4).  In fact, Plaintiff readily admits that he agreed to his promotion to a salaried position and only later asked to be switched back to an hourly rate when he realized that a higher income affected his eligibility for government benefits. (Pl. Dep. pp. 157:22-159:11).

48.     From December 2013 Plaintiff was compensated for all hours worked using the fluctuating workweek method of overtime compensation (Pl. Dep. pp. 142:7-142:22; Compilation of Plaintiff's Paychecks, **Exhibit B**).

49.     With regard to Plaintiff's allegation that Correa is "Plaintiff's employer as defined by 29 U.S.C. 203(d)" (D.E. 1, ¶4), Plaintiff concedes that he has no direct knowledge of Correa (1) determining his salary, (2) holding any corporate officer position with Yachting Promotions, (3) having any ownership in Yachting Promotions, or (4) having any responsibility for payment of his wages (Pl. Dep. pp. 238:1-239:23, 249:4-250:18).

50.     Operational decisions are made by Yachting Promotions' Board of Directors, on which Defendant Correa has no seat (Corp. Rep. Dep. p. 6:22-7:6).

51.     Defendant Correa is the Vice President of Logistics, one of Yachting Promotions' many departments (Corp. Rep. Dep. p. 4:13-17).

52.     The Board of Directors, not Correa, had sole authority to make decisions as to Plaintiff's wages (Corp. Rep. Dep. pp. 6:22-7:6).

## IV.   YACHTING PROMOTIONS PROPERLY APPLIED THE FLUCTUATING WORKWEEK METHOD

Yachting Promotions met all four requirements from the Department of Labor ("DOL") to use the fluctuating workweek method of calculating overtime.

Per DOL guidance, the fluctuating workweek method of calculating overtime can be used where the following requirements are met:

> (1) the employee is paid a fixed salary that does not vary with the number of hours worked during the workweek (excluding overtime premiums);
>
> (2) the salary is sufficiently large to ensure that no workweek will be worked in which the employee's earnings from the salary fall below the Act's minimum wage rate;
>
> (3) the employer and employee share a "clear mutual understanding" that the salary covers all hours worked during the workweek, regardless of the number; and
>
> (4) the employee's hours fluctuate from week to week.

29 C.F.R. § 778.114.

Numerous courts, including the Eleventh Circuit, have adopted this DOL guidance.  See, e.g. *Garcia v. Yachting Promotions, Inc.*, 2016 WL 6276046, at *2 (11th Cir. Oct. 27, 2016); *Garcia v. Port Royale Trading Co. Inc.*, 198 Fed. App'x. 845, 846 (11th Cir. 2006); *Davis v. Friendly Exp., Inc.*, 2003 WL 21488682, at *1 (11th Cir. Feb. 6, 2003).

In the instant case, (1) Plaintiff was regularly paid a fixed salary of $620.00 per week that did not vary with the number of hours he worked during the workweek; (2) Compilation of Plaintiff's Paychecks firmly establish that his salary was sufficiently high enough to ensure that his earnings from the salary never fell below the FLSA's minimum wage rate in any workweek; (3) Plaintiff's hours fluctuated from week to week; and (4) Plaintiff and Yachting Promotions shared a clear mutual understanding that Plaintiff's salary covered all hours worked during the workweek, regardless of the number.  Plaintiff only disputes that requirements 1 and 4 were met.

## A. Plaintiff Had A Clear And Mutual Understanding That His Salary Covered All Hours Worked During The Workweek.

Regarding requirement (4), Plaintiff suggests in his Motion that he lacked a "clear mutual understanding" that his salary covered all hours worked during the workweek.

The Eleventh Circuit has held that the burden of proving a lack of mutual understanding lies with the Plaintiff. *Davis*, 2003 WL 21488682, at n. 4 ("Generally, a FLSA Plaintiff carries the burden of proving all elements of a FLSA claim. When, however, an employer relies on an exemption from a FLSA requirement, the employer generally bears the burden of showing that the exemption applies. As the Fifth Circuit concluded, the fluctuating workweek method is an alternative means of complying with the overtime provisions of FLSA, it is no exemption from those provisions."); *see also, Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) ("the [fluctuating workweek] method is one method of complying with the overtime payment requirements of 29 U.S.C. § 207(a)(1). It is not an exemption to it. (internal citations omitted). Therefore, the employee bears the burden of proving that the employer failed to properly administer the [fluctuating workweek] method"). Plaintiff has failed to meet this burden.

Plaintiff cannot point to any evidence for this contention that there was no mutual understanding. Instead, he argues (1) that he was not handed any paperwork that explained his

new method of pay to him, (2) that he did not understand how the fluctuating workweek method worked, and (3) that Gilbert Bobillo, Denise Hegeman, and Paul Zack, the managers that were deposed, could not explain how the fluctuating workweek method is applied.

As an initial matter, the fact that Plaintiff did not sign an agreement or document is immaterial since a writing is not required by the FLSA. *Griffin v. Wake County*, 142 F.3d 712, 716 (4th Cir. 1998) (Written acknowledgments are not required to satisfy section 778.114.); *Bailey v. County of Georgetown*, 94 F.3d 152, 156 (4th Cir.1996) ("Nor do the regulation and the FLSA in any way indicate that an employer must secure from its employees written acknowledgments indicating that the employees' pay plan has been explained to them.").

Further, the Eleventh Circuit has clearly stated that "[n]either the regulation nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated." *Davis*, 2003 WL 21488682 at *2 (quoting *Bailey v. County of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996)). All that is required is a "clear mutual understanding that the salary covers all hours worked during the workweek, regardless of the number." 29 C.F.R. § 778.114; *Garcia v. Yachting Promotions, Inc.,* 2016 WL 6276046, at *2 (11th Cir. Oct. 27, 2016) ("An employee does not have to understand every contour of how the fluctuating workweek method is used to calculate salary, so long as the employee understands that his base salary is fixed regardless of the hours worked.")*; Garcia v. Port Royale Trading Co. Inc*., 198 Fed. App'x. 845, 846 (11th Cir. 2006) (affirming summary judgment and holding that "[d]espite [plaintiff's] claims of not understanding how he was paid . . . he did understand how much money he was paid each week.  He also knew that his hours fluctuated each week and that once he executed accepted the promotion and received a fixed salary for fluctuating hours the manner in which he was compensated had changed.); *Valerio v. Putnam Associates Inc.*, 173

F.3d 35, 37 (1st Cir. 1999) (holding that "parties must only have reached a 'clear mutual understanding' that while the employee's hours may vary, his or her base salary will not").

Here, Plaintiff understood that he was paid a $620.00 salary each week (SOF ¶41). In fact, Plaintiff wrote on the first paycheck he received as a salaried employee the word "salary" next to the amount of $620.00. (Compilation of Plaintiff's Paychecks, p.1, **Exhibit A**). Plaintiff also knew that his hours fluctuated each week but his salary did not, which is all that is required as a matter of law to satisfy the "clear mutual understanding" requirement (SOF ¶¶41, 45).

Furthermore, Plaintiff readily admits that he agreed to his promotion to a salaried position and only later asked to be switched back to an hourly rate when he realized that a higher income affected his government benefits (SOF ¶47). Plaintiff also admits that he was aware that the method of calculating his wages changed after he was promoted to a salaried position, he knew the way in which his overtime compensation was calculated changed, he knew that his hours and resulting rates of pay fluctuated, and he continued to report to work and accept paychecks from Yachting Promotions for two (2) years after his promotion. Plaintiff seemingly only takes issue with the fact that, once promoted to a salaried position with Yachting Promotions, his compensation was such that he no longer qualified for governmental public assistance benefits (SOF ¶47).

Finally, the continued acceptance of paychecks echoes the required mutual understanding. *Garcia v. Yachting Promotions, Inc.*, 2015 WL 12533144, at *2 (S.D. Fla. Dec. 8, 2015) ("paychecks echo . . . mutual understanding"). As the Eleventh Circuit has previously clarified, employees receive "a regular lesson-in the form of their paychecks-about how the fluctuating workweek plan operates." *Davis v. Friendly Exp., Inc.*, 2003 WL 21488682, at *2 (11th Cir. Feb. 6, 2003)( citing *Griffin v. Wake County*, 142 F.3d 712, 716-17 (4th Cir.1998).

Plaintiff can hardly claim that there was "not a breakdown of hourly pay, or any other details on the paystubs that would have helped Plaintiff establish an understanding of how he was paid" (Plaintiff's Motion, D.E. 72). Each of Plaintiff's paychecks clearly show his base salary of $620.00 and how much he was paid in overtime for each pay period. (Compilation of Plaintiff's Paychecks, **Exhibit B**). In fact, he wrote the word "salary" next to the number $620.00 on his first paycheck that he received as a salaried employee. (Compilation of Plaintiff's Paychecks, p.1, **Exhibit B**). During the weeks where Plaintiff did not work overtime, the paychecks reflect that he only received his base salary and the field for overtime was left blank. (Compilation of Plaintiff's Paychecks, p.1, **Exhibit B**). Thus, Plaintiff's paychecks echoed a mutual understanding that he received a salary for all hours worked during the workweek, regardless of the number.

Whether or not the managers Gilbert Bobillo, Denise Hegeman, and Paul Zack were able to explain in their depositions how the fluctuating workweek method works is irrelevant. The only relevant inquiry is whether or not Plaintiff had a clear and mutual understanding of how the method is applied.

Therefore, Plaintiff cannot meet his burden to prove a lack of "clear mutual understanding" that he was paid using the fluctuating workweek method.

**B.      Plaintiff Was Paid a Straight Salary Whether The Week Was Under Or Over The Hours That He Was Expected To Work.**

Plaintiff further argues that Yachting Promotions did not pay him as required under the fluctuating workweek method. The FLSA requires that "the employee is paid a fixed salary that does not vary with the number of hours worked during the workweek (excluding overtime premiums)" 29 C.F.R. § 778.114.

Indeed, Compilation of Plaintiff's Paychecks show and Plaintiff readily admitted during his deposition that while working for Yachting Promotions, Plaintiff was regularly paid a fixed salary of $620.00 per week that did not vary with the number of hours he worked during the workweek. (SOF ¶41; Compilation of Plaintiff's Paychecks, **Exhibit B**).   Each of Plaintiff's paychecks clearly show his base salary of $620.00 and how much he was paid in overtime for each pay period. (Compilation of Plaintiff's Paychecks, **Exhibit B**).   In fact, he wrote the word "salary" next to the number $620.00 on his first paycheck that he received as a salaried employee. (Compilation of Plaintiff's Paychecks, p.1, **Exhibit B**).   During the weeks where Plaintiff did not work overtime or less than 40 hours, the paychecks reflect that he received his base salary and the field for overtime was left blank. (Compilation of Plaintiff's Paychecks, p.1, **Exhibit B**).   At no time was Plaintiff's salary docketed.  Plaintiff only cited to his own contentions in his deposition and did not provide a single paycheck that would evidence that his pay was docketed.   This is so simply because there is no paycheck that would evidence docketing of his salary. (*See* Compilation of Plaintiff's Paychecks, **Exhibit B**).   Thus, Plaintiff cannot meet his burden of proof establishing that he was not paid a fixed salary that does not vary with the number of hours worked during the workweek (excluding overtime premiums).

### C.    Yachting Promotions Did Not Purposefully Circumvent Plaintiff's Rights Under the FLSA.

Plaintiff unsupported allegation that Yachting Promotions used the fluctuating workweek method to circumvent the protections of the FLSA is simply incorrect.   As Plaintiff's paychecks clearly evidence, there were at least 27 weeks out of the 101 week he received a salary in which Plaintiff worked less than 40 hours in one workweek and he was still paid his salary of $260.00. (*See* Verified Summary, **Exhibit H**). Thus, his hours fluctuated significantly and the fluctuating

workweek method was applied properly and in the good faith belief that Yachting Promotions is complying with the FLSA.

The fluctuating workweek method is an alternative method of paying overtime recognized by courts and the FLSA. Applying this method does not mean that an employer is attempting to avoid paying overtime under the FLSA, on the contrary, it means the employer is complying with the FLSA.

Further, the FLSA implementing regulations provide that a salary calculated with the fluctuating workweek method is "[t]ypically. . . paid to employees who do not customarily work a regular schedule of hours" 29 C.F.R. § 778.114(c).  The regulations do not require that an employee works less than the hours that the Plaintiff was expected to work for a certain amount of weeks. Applying the fluctuating workweek method is just another means recognized by courts, and codified in the FLSA implementing regulations to pay overtime to employees who do not work a regular schedule. As Plaintiff's paycheck evidence, he is such an employee.  Yachting Promotions' operations are very much dictated by different boat shows, for which there is a season as Plaintiff recognized himself in his Motion. (D.E. 72, p. 8).

Plaintiff cites to case law that does not even address the fluctuating workweek method. *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, for example is a case in which the Eleventh Circuit held that the school board did not violate FLSA when it paid bus driver or bus monitor different rates of pay depending on type of route driven and paid overtime based on "blended rate." *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306 (11th Cir. 2007). Other cases cited by Plaintiff are *Ziegler v. Tower Communities, LLC*, No. 2:13-CV-872-KOB, 2015 WL 1208643, at *22 (N.D. Ala. Mar. 17, 2015) and *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th Cir. 2013), (emphasis added). Both of those cases only speak to the question on whether the

fluctuating workweek method can be used to calculate unpaid overtime.  *See id*.  Plaintiff seems to confuse the question on what method of calculating damages applies when a violation is found with the questions of whether the fluctuating workweek was properly applied by an employer to comply with the FLSA.

Thus, this Court should find that Yachting Promotions properly applied the fluctuating workweek method to Plaintiff and deny his Motion for Partial Summary Judgment.

## V.  PLAINTIFF FAILED TO STATE A CLAIM AGAINST DEFENDANT CORREA.

Plaintiff's claim against Correa fails because Correa was not an employer as defined by the FLSA.  However, Plaintiff conclusion that Correa is an employer liable under the FLSA is simply mistaken.

The Eleventh Circuit unambiguously has held that the FLSA does not apply to an individual in the absence of an employer-employee relationship under 29 U.S.C. §§ 206–07.  *See Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir.Fla.1997).  To bring an individual within the FLSA's definition of "employer," it is necessary to establish that the individual had "operational control" in the company.  *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1381 (S.D. Fla. 2012).  Plaintiff has not asserted any facts that would be sufficient to lead to this conclusion.  Contrary to Plaintiff's assertion, it is not enough to state that Correa ran the day-to-day operations of the Yachting Promotions for the relevant time period and was responsible for paying Plaintiff's wages for the relevant time period and controlled Plaintiff's work and schedule and was therefore Plaintiff's employer as defined by 29 U.S.C. 203 (d). (D.E. 72, p. 12).

For operational control, it would be necessary to allege that Defendant Correa had control over the company's finances and/or set the employees' wages.  Plaintiff did not and cannot

allege facts to support this.  Tellingly, Plaintiff concedes that he has no direct knowledge of Defendant Correa (1) determining his salary, (2) holding any corporate officer position with Yachting Promotions, (3) having any ownership in Yachting Promotions; or (4) having any responsibility for payment of his wages (SOF ¶49).  In fact, Correa is neither a corporate officer nor does he have operational control over the company, its finances, or employees' wages. Operational decisions are made by Yachting Promotions' Board of Directors, on which Correa has no seat (SOF ¶50).  Defendant Correa is only the Vice President of Logistics, one of Yachting Promotions' many departments (SOF ¶51).  Defendant Correa also testified that he had no authority to make decisions as to Plaintiff's wages. Specifically, he testified that he only made a "recommendation to the accounting department of the board" with regards to changing Plaintiff to a salaried position (SOF ¶52). Therefore, Plaintiff cannot meet his burden to prove that Defendant Correa is an employer liable under the FLSA.

## VI.    CONCLUSION

WHEREFORE, Defendants respectfully request that the Court deny Plaintiff's Motion for Partial Summary Judgment.

Dated November 11, 2016.

Respectfully submitted,

*/s/Kevin D. Zwetsch*
KEVIN D. ZWETSCH
Florida Bar Number 0962260
E-mail: kevin.zwetsch@ogletreedeakins.com
INA F. CRAWFORD
Florida Bar Number 117663
E-mail: ina.crawford@ogletreedeakins.com

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

100 North Tampa Street, Suite 3600

Tampa, Florida 33602
Telephone: 813.289.1247
Facsimile: 813.289.6530

ATTORNEYS FOR DEFENDANTS
YACHTING PROMOTIONS, INC. and
ROBERT CORREA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 11, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_*/s/Kevin D. Zwetsch*_____
Attorney

## <u>SERVICE LIST</u>

J.H. Zidell
Joshua H. Sheskin
Stephen M. Fox, Jr.
Allyson Greer Kutner
Rivkah F. Jaff
J.H. ZIDELL, P.A.
300 71st Street, Suite 605
Miami Beach, Florida  33141
zabogado@aol.com
jsheskin.jhzidellpa@gmail.com
stephen.fox.esq@gmail.com
amorgado.jhzidell@gmail.com
rivkah.jaff@gmail.com

(Counsel for Plaintiff)
*via CM/ECF Electronic Notification*

27023975.1