## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-24308-CIV-LENARD/GOODMAN

**JOSEPH LUIS DE JESUS JR,**

      Plaintiff,

**v.**

**YACHTING PROMOTIONS, INC.**
**and ROBERT CORREA,**

      Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (D.E. 72) AND DENYING DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT (D.E. 74)

**THIS CAUSE** is before the Court on Plaintiff's Motion for Partial Summary Judgment, ("Pl.'s Mot.," D.E. 72), filed October 19, 2016.  Defendants filed a Response on November 11, 2016, ("Defs.' Resp.," D.E. 78), to which Plaintiff filed a Reply on November 21, 2016, ("Pl.'s Reply," D.E. 80).  Also before the Court is Defendants' Motion for Final Summary Judgment, ("Defs.' Mot.," D.E. 74), filed October 25, 2016.  Plaintiff filed a Response on November 14, 2016, ("Pl.'s Resp.," D.E. 79), to which Defendants filed a Reply on November 28, 2016, ("Defs.' Reply," D.E. 81).  Upon review of the Motions, Responses, Replies, and the record, the Court finds as follows.

## I.   Background[1]

This is an action arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-216.   Plaintiff, Joseph Luis de Jesus, Jr., began working for the corporate Defendant, Yachting Promotions, Inc. as an hourly-paid warehouse employee on October 11, 2011.   (Defs.' Facts ¶ 1.)   Approximately two years later, Plaintiff became a salaried employee with benefits.   (Id. ¶ 2.)   He continued to work as a warehouse employee and traveled to boat shows within the State of Florida and outside the country until his employment ended on or about November 5, 2015.   (Id.)

When Plaintiff became a salaried employee he was earning $620 per week; his salary later increased to $638 per week.   (Id. ¶ 3; Pl.'s Dep. (D.E. 73-1) at 140:14-25, 141:1-21.)   Defendants contend that Plaintiff was compensated for all hours worked using the fluctuating workweek method of overtime compensation.   (Id. ¶ 10)   Under the fluctuating workweek method, Plaintiff was paid a fixed salary every week regardless of the number of hours he worked, plus a half-time rate for any overtime hours worked (rather than the more familiar "time-and-a-half" overtime rate).   (Defs.' Resp. Facts ¶ 11.)   To ensure accuracy, Yachting Promotions used the "Coefficient Table for Computing a Half-Time for Overtime" provided by the U.S. Department of Labor ("DOL") to calculate Plaintiff's overtime payments.   (Defs.' Facts ¶ 4.)   Plaintiff disputes

---

[1]      Unless otherwise noted, the following facts are gleaned from Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment, ("Pl.'s Facts," D.E. 73), Defendants Response to Plaintiff's Statement of Material Facts and Additional Facts, which are incorporated into their Response, ("Defs.' Resp. Facts," D.E. 78 at 2-11), Defendants' Statement of Undisputed Material Facts, which was incorporated into their Motion, ("Defs.' Facts," D.E. 74 at 3-6), and Plaintiff's Answer to Defendants' Statement of Material Facts and Additional Facts, ("Pl.'s Resp. Facts," D.E. 79-2).   All facts are undisputed unless otherwise indicated.

that he was paid under the fluctuating workweek method.  (Pl.'s Resp. Facts (D.E. 79-2) ¶ 10.)

At his deposition, Plaintiff testified that he was paid his fixed salary every paycheck, "regardless of how many hours [he] worked," (Pl.'s Dep. at 141:11-19; see also id. at 112:9-18), but later stated that on "a few occasions" he was docked "a couple of hours" that he did not work on occasions when he worked fewer than forty hours in a week (id. at 152:1-10; 216:13-20; 217:19-25; 218:1-24).  Plaintiff could not remember when he was docked, (id. at 152:11-15), and each of the paystubs that Plaintiff produced indicates that he was always paid his fixed salary, (id. at 109:11-25, 110:1-25, 111:1-18; see also Pl.'s Pay Records, D.E. 78-2).  Additionally, Defendants produced a "Verified Summary of Payment of Salary in Weeks of Less Than 40 Hours of Work" which shows that Plaintiff worked fewer than forty hours in 27 of the 101 weeks in which he was paid as a salaried employee, and received his fixed salary in each of those weeks.  ("Verified Summary," D.E. 78-8.)  Plaintiff did not produce any records indicating that he was docked any hours.  (See Pl.'s Pay Records, D.E. 78-2.)  However, he provided an Affidavit stating that he was docked paid vacation and sick leave when he worked fewer than forty hours. (See Pl.'s Aff., D.E. 79-1 ¶¶ 2-3.)

On November 20, 2015, Plaintiff filed this lawsuit against Yachting Promotions and individual defendant, Robert Correa, alleging violations of the FLSA's overtime

wage provisions.[2]   (Compl., D.E. 1.)   Plaintiff asserts that Correa personally made

decisions as to how the company compensated Plaintiff and other employees.   (Pl.'s Facts

¶¶ 23, 27.)   Defendants dispute that Correa had authority to make decisions about

Plaintiff's wages.   (Defs.' Resp. Facts ¶¶ 23, 27.)   They state that while Correa

"recommended Plaintiff's promotion and payment under the" fluctuating workweek

method, Yachting Promotions' Board of Directors had sole authority over decisions

regarding Plaintiff's promotion and wages, and those of its other employees.   (Id.)

Plaintiff also asserts that Correa had control over the number of hours employees worked

at boat shows, (id. ¶ 28), but Defendants assert that this statement is a mischaracterization

and that Correa did not have control over the scheduling of employees, like Plaintiff, who

were not under his direct supervision, (Defs.' Resp. Facts ¶ 28).

Further facts will be developed where necessary to the Court's discussion.

## II.   Legal Standard

On a motion for summary judgment, the Court is to construe the evidence and

factual inferences arising therefrom in the light most favorable to the nonmoving party.

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).   Summary judgment can be

entered on a claim only if it is shown "that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   In

addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary

judgment for the non-moving party "[a]fter giving notice and a reasonable time to

---

[2]   The Complaint also alleged a violation of the FLSA's retaliation provision, but on September 15, 2016, the Parties filed a Joint Stipulation of Dismissal with prejudice of the retaliation count.   (See D.E. 69.)

respond." Fed. R. Civ. P. 56(f)(1); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir. 2011). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party. Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by

the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324; see also Fed. R. Civ. P. 56(c).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Id. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

## III.   Discussion

Plaintiff argues that the fluctuating workweek method of calculating compensation was improperly applied to him because two of the four requirements for applying the fluctuating workweek are absent here.  (Pls.' Mot. at 3-7.)  Plaintiff further argues that even if all of the requirements are satisfied, the fluctuating workweek was improperly applied to him because he never worked under forty hours in a week.  (Id. at 7-9)  Finally, he argues that the individual Defendant, Robert Correa, is an employer under the FLSA.  (Id. at 10.)

### a)   The Fluctuating Workweek

Generally, the FLSA requires employers to pay an employee one and one-half times the employee's "regular rate" for all hours worked in excess of forty hours.  See 29 U.S.C. § 207(a)(1).  However, for certain salaried employees, the FLSA's implementing regulations provide for an alternative method of calculating compensation called the "fluctuating workweek." See 29 C.F.R. § 778.114.

6

The fluctuating workweek method of payment allows an employee whose hours fluctuate from week to week to be compensated at a fixed amount per week as straight-time pay irrespective of the number—few or many—of hours worked.  Payment for overtime hours under this method is at one-half time regular-rate instead of the standard one and one-half time rate because the straight-time rate already includes compensation for all hours worked.  The regular-rate of hourly compensation will vary from week to week depending on the number of actual hours worked in any given workweek; it is calculated by dividing the number of hours worked into the amount of the straight-time salary.

Davis v. Friendly Express, Inc., No. 02-14111, 2003 WL 21488682, at *1 (11th Cir. Feb. 6, 2003).   The regulations permit the fluctuating workweek method of calculating compensation only if:

(1) the employee clearly understands that the straight-salary covers whatever hours he or she is required to work;

(2) the straight-salary is paid irrespective of whether the workweek is one in which a full schedule of hours are worked;

(3) the straight-salary is sufficient to provide a pay-rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours worked is greatest; and

(4) in addition to straight-salary, the employee is paid for all hours in excess of the statutory maximum at a rate not less than one-half the regular rate of pay.

Garcia v. Yachting Promotions, Inc., __ F. App'x __, 2016 WL 6276046, at *2 (11th Cir. 2016) (citing 29 C.F.R. §778.114).   "[T]he employee bears the burden of proving non-compliance with the fluctuating workweek method."  Davis, 2003 WL 21488682, at *3.

Plaintiff contests only whether the first and second requirements have been satisfied.  (See Pl.'s Mot. at 3-7.)

### 1.     Clear understanding

Defendants argue that Plaintiff conceded during his deposition that he clearly understood that his hours fluctuated but his pay did not.  (Defs.' Mot at 7.)     Plaintiff argues that he was not paid a fixed salary, so "there was no salary to understand[.]"  (Pl.'s Resp. at 4.)

"The fluctuating workweek method of payment applies only if there is a clear mutual understanding of the parties that the fixed salary is compensation for however many hours the employee may work in a particular week, rather than for a fixed number of hours per week."  Garcia, __ F. App'x __, 2016 WL 6276046, at *2 (citing Clements v. Serco, Inc., 530 F.3d 1224, 1230 (10th Cir. 2008); Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 39 (1st Cir. 1999)); see also Davis, 2003 WL 21488682, at *1.  "An employee does not have to understand every contour of how the fluctuating workweek method is used to calculate salary, so long as the employee understands that his base salary is fixed regardless of the hours worked."  Id. (citing Clements, 530 F.3d at 1230; Samson v. Apollo Res., Inc., 242 F.3d 629, 636-37 (5th Cir. 2001); Valerio, 173 F.3d at 40).  "[T]he employee must 'clearly understand[ ] that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked.'"  Id. (quoting 29 C.F.R. §778.114).

Here, Plaintiff conceded at his deposition that he understood he was receiving a fixed salary no matter how many hours he worked.

Q.      Let's look at your paycheck, sir.  The first one here, on Exhibit 1, the 620, that was your salary, 620, correct?

A.      Yes.

Q.      And every paycheck you got after that showed a salary of $620, correct?

A.      Yes.

Q.      Okay.  So you knew you were receiving a salary of $620 a week –

A.      Yes.

Q.      -- regardless of how many hours you worked, correct?

A.      Yes.

Q.      And you knew that?

A.      Yes.

(Pl.'s Dep. (D.E. 73-1 at 141:7-21.)  Later in his deposition he agreed that after he became a salaried employee he received "a fixed salary every week . . . ."  (Id. at 188:16-19.)

The Court finds that there is no genuine issue of material fact on this issue—all of the relevant evidence establishes that Plaintiff clearly understood that his weekly salary was fixed at $620 (and later $638), regardless of how many hours he worked.  (Pl.'s Dep. (D.E. 73-1 at 141:7-21.)  That is all that is required for this requirement to be satisfied. See Garcia, __ F. App'x __, 2016 WL 6276046, at *2 (citing Clements, 530 F.3d at 1230 ("[O]ur inquiry is whether the Employees and [Employer] had a clear and mutual understanding that they would be paid on a salary basis for all hours worked."); Samson,

242 F.3d at 636-37 ("[Section 778.114] only requires that '[t]here is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period.'"); Valerio, 173 F.3d at 40 ("The parties must only have reached a "clear mutual understanding" that while the employee's hours may vary, his or her base salary will not.").  Plaintiff's arguments to the contrary are either unavailing[3] or better understood as challenges to the second requirement, i.e., that he was paid a fixed salary no matter how many hours worked.

### 2.    Fixed salary regardless of number of hours worked

Next, Plaintiff argues that he was not paid a fixed salary regardless of the number of hours he worked.  (Pl.'s Resp. at 4-7.)  Specifically, he argues that, for the weeks he worked fewer than forty hours, although he was compensated at a fixed monetary amount, he was improperly docked paid vacation and sick leave.  (Id. at 5 n.1 (citing Aff. of Joseph de Jesus, Jr., D.E. 79-1).)  He argues, in essence, that his pay includes these benefits and by docking him these benefits Defendants failed to pay him a fixed salary

---

[3]     For example, Plaintiff tries to prove a lack of clear mutual understanding by arguing in his Motion that he never received or signed documents describing the fluctuating workweek, that nobody ever described to him how his overtime would be calculated, and he never agreed to be compensated in such a manner.  (See Pl.'s Mot., D.E. 71 at 5-6.)  However, none of these are requirements for the fluctuating workweek.  "Written acknowledgments are not required to satisfy section 778.114."  Griffin v. Wake Cnty., 142 F.3d 712, 716 (4th Cir. 1998).  All that is required is that the Parties have "a clear mutual understanding . . . that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period."  29 C.F.R. 778.114.  "Neither the regulation nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated.  Nor do the regulation and the FLSA in any way indicate that an employer must secure from its employees written acknowledgements indicating that the employees' pay plan has been explained to them."  Bailey v. Cnty. of Georgetown, 94 F.3d 152, 156 (4th Cir. 1996).

when he worked fewer than forty hours.  (See Pl.'s Resp. at 5-6.)  Plaintiff further argues that he was not paid a fixed salary for weeks he worked more than forty hours because his salary "was mixed with fixed, non-discretionary per-diem bonuses" on boat show days.  (Id. at 10.)

### A.  Deductions from accrued vacation and sick leave

First, Plaintiff argues that he was not paid a "fixed salary" because Defendants deducted accrued vacation and sick leave on at least a few occasions when he worked fewer than forty hours in a week.  (Id. at 5-6.)  Although the Eleventh Circuit has apparently not addressed Plaintiff's argument, the Fourth Circuit has explicitly rejected it.  See Griffin v. Wake County, 142 F.3d 712, 717-18 (4th Cir. 1998); Aiken v. County of Hampton, 172 F.3d 43 (4th Cir. 1998) (unpublished table decision), available at 1998 WL 957458.  In Griffin, the plaintiffs were EMTs paid under the fluctuating workweek method who were scheduled to work either 48 or 72 hours in a given week.  142 F.3d at 714.  When they did not arrive for scheduled shifts, their employer deducted paid vacation or sick leave.  Id. at 117-18.  The EMTs argued that being docked paid vacation and sick leave violated 29 C.F.R. § 778.114.  Id. at 117.  However, they did not allege that their pay was ever docked for their absences.  Id. at 718.  The Fourth Circuit observed that "section 778.114 does not mention leave or vacation at all—it only governs the pay that employees receive."  Id. (citing 29 C.F.R. § 778.114).  "Unlike deductions from base pay, such deductions from leave simply do not constitute a violation of section 778.114."  Id.

In <u>Aiken</u>, the employees were salaried sheriff's deputies paid under the fluctuating workweek method.  1998 WL 957458, at *1.  Their employer would dock their vacation or sick leave when they worked fewer than their scheduled hours in a week, regardless of whether the employee submitted a leave form.  <u>Id.</u> at *3.  The employees sued under the FLSA, arguing that this docking violated the fluctuating workweek method of compensation.  <u>Id.</u> at *4.  They argued that their "pay encompasses fringe benefits such as sick leave and vacation leave and that Hampton County's practice of docking leave time is equivalent to reducing their pay for failing to work a full workweek."  <u>Id.</u>  The Fourth Circuit disagreed, holding that <u>Griffin</u> foreclosed such an argument.  <u>Id.</u>  "<u>Griffin</u> held that vacation leave and sick leave are extra benefits and that section 114 applies only to pay."  <u>Id.</u>

The Court acknowledges that the facts in <u>Griffin</u> and <u>Aiken</u> are somewhat distinguishable from the case at bar in that the employees in those cases were docked vacation and sick days when they took time off of <u>scheduled</u> shifts.  <u>See</u> <u>Griffin</u>, 142 F.3d at 717; <u>Aiken</u>, 1998 WL 957458, at *3.  Here, Plaintiff argues that Defendant docked him vacation and sick leave on a few occasions simply because he worked fewer than 40 hours, "whether there was work or not."  (Pl.'s Aff. ¶ 3.)  Regardless, "deductions from leave simply do not constitute a violation of section 778.114."  <u>Griffin</u>, 142 F.3d at 718.  "[V]acation leave and sick leave are extra benefits and . . . section 114 applies only to pay."  <u>Aiken</u>, 1998 WL 957458, at *4.

Plaintiff cites no authority, and this Court has found none, supporting his argument that deducting an employee's accrued vacation and sick leave when he works fewer than

12

forty hours in a week violates the fluctuating workweek method of compensation.  In fact, the only case Plaintiff cites in support of his argument—Adams v. Department of Juvenile Justice of City of New York, 143 F.3d 61 (2d Cir. 1998)—does not mention the fluctuating workweek method or otherwise cite to 29 C.F.R. § 778.114.  Thus, Adams is inapposite.

The Court finds that even if Defendants actually docked Plaintiff accrued vacation and/or sick leave on occasions when he worked fewer than forty hours in a week, such a scenario does not violate the fluctuating workweek method of calculating compensation, 29 C.F.R. § 778.114.  Griffin, 142 F.3d at 718; Aiken, 1998 WL 957458, at *4; Teblum v. Eckerd Corp. of Fla., Inc., No. 2:03CV495FTM33DNF, 2006 WL 288932, at *8-9 (M.D. Fla. Feb. 7, 2008) (concluding that deducting time from holiday, sick, or vacation leave when an employee performed no actual work does not run afoul of 29 C.F.R. § 778.114 "so long as the employee receives the same weekly base salary"); Op. Letter of the Wage & Hour Div., 1999 WL 1002399, at *2 (Dep't of Labor May 10, 1999) ("[D]eductions may be made from vacation or sick leave banks because of absences for personal reasons or illness, as long as no deductions are made from an employee's salary."); cf., Foucher v. Kraft Foods Global, Inc., No. 2:08-CV-14896, 2009 WL 4350251, at *2 n.3 (E.D. Mich. Nov. 30, 2009) (noting that plaintiff's counsel agreed to dismiss FLSA overtime wage claim pursuant to the holding in Griffin where the plaintiff alleged that, although she received a fixed weekly salary, her employer violated the fluctuating workweek by deducting banked hours of vacation, holiday and sick pay when she worked fewer than forty hours).

### B.      Per-diem payments

The more compelling argument that Plaintiff makes in his Response is that he was not paid a fixed weekly salary because he received extra pay during boat show weeks when he worked <u>more</u> than forty hours.[4]  (Pl.'s Resp. at 10.)  Specifically, in addition to his weekly salary, he was paid a $30 "non-discretionary per-diem bonus[]" during boat show days.  (Pl.'s Resp. at 10 (citing <u>West v. Verizon Servs. Corp.</u>, No. 8:08–cv–1325–T–33MAP, 2011 WL 208314, at *11 (M.D. Fla. Jan. 21, 2011); Defs.' Corp. Rep. Dep, D.E. 73-2 at 13:25, 14:1.)  Plaintiff characterizes this additional payment as an overtime premium.  (<u>Id.</u> at 11.)  Defendants argue that this is a mischaracterization and that the per diem is a daily allowance for living expenses when travelling for work.  (Defs.' Reply (D.E. 81) at 4 (citing I.R.C. § 62(c); Treas. Reg. § 1.62-2).)  They argue that the FLSA specifically excludes these types of payments from an employee's regular rate of pay and, therefore, the per diem does not affect Plaintiff's "fixed weekly salary."  (<u>Id.</u> at 4-5 (citing 29 U.S.C. § 207(e)(2)).)

The FLSA's general rule is that is that the regular rate "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee."  29 U.S.C. § 207(e).  However, the statute contains an exhaustive list of exceptions to this general rule. 29 U.S.C. §207(e)(1)-(e)(8).  "[T]he exceptions are to be interpreted narrowly against the employer, <u>see</u> <u>Mitchell v. Kentucky Fin. Co.</u>, 359 U.S. 290, 295–96, 79 S. Ct. 756, 3 L. Ed. 2d 815 (1959), and the employer bears the burden of showing that an exception

---

[4]      Plaintiff does not make this argument in his own Motion for Summary Judgment, (D.E. 72), but includes it in his Reply in support thereof, (D.E. 80).

applies, see Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 209, 86 S. Ct. 737, 15 L. Ed. 2d 694 (1966)." O'Brien v. Town of Agawam, 350 F.3d 279, 294 (1st Cir. 2003).

"[T]he regular rate cannot be stipulated by the parties; instead, the rate must be discerned from what actually happens under the governing employment contract." Id. (citing Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 462-63 (1948)). Thus, whether the $30 "per diem" is part of Plaintiff's regular wage rate is a fact question. Newman v. Advanced Tech. Innovation Corp., 749 F.3d 33, 37 (1st Cir. 2014) (citing Bay Ridge, 334 U.S. at 461 ("'The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact.'") (quoting Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)). See also Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 680 (7th Cir. 2010) ("The employee's regular rate of pay is a factual matter[.]"); Martin v. S. Premier Contractors, Inc., Civil Action No. 2:11–CV–00197–RWS, 2013 WL 822635, at *9 (N.D. Ga. Mar. 6, 2013) ("An employee's regular rate of pay is a question of fact.").

Plaintiff argues that "[a]n employee's salary is not presumed to be fixed, or presumed to be understood to be fixed, when the employee receives commissions and/or bonuses[.]" (Pl.'s Resp. at 10 (citing West, 2011 WL 208314, at *11).) In West, the court found that the employee's "salary was not 'fixed' because she received various bonus payments and commissions." 2011 WL 208314, at *11. The court provided no citation for this conclusion, and, in fact, the relevant legal authority holds that

15

performance-based bonuses—like those at-issue in West[5]—do not violate the "fixed weekly salary" requirement in 29 C.F.R. § 778.114.  See generally Wills v. RadioShack Corp., 981 F. Supp. 2d 245, 255-63 (S.D.N.Y. 2013); see also Lalli v. Gen. Nutrition Ctrs., Inc., 814 F.3d 1, 4-5 (1st Cir. 2016) (holding that "the payment of a performance-based commission does not foreclose the application of section 778.114 with respect to the salary portion of the pay structure at issue"); Switzer v. Wachovia Corp., No. H-11-1604 (NFA), 2012 WL 3685978 (S.D. Tex. Aug. 24, 2012); Soderberg v. Naturescape, Inc., No. 10 Civ. 3429, 2011 WL 11528148, 2011 U.S. Dist. LEXIS 156235 (D. Minn. Nov. 3, 2011); Brantley v. Inspectorate Am. Corp., 821 F. Supp. 2d 879, 889-90 (S.D. Tex. 2011); Lance v. Scotts Co., No. 04 Civ. 5720(AK), 2005 WL 1785315 (N.D. Ill. Jul. 21, 2005).  Regardless, West is inapposite because there is no evidence or argument that the extra $30 Plaintiff received on boat show days was based on performance.

However, most (if not all) courts hold that hours-based bonuses or premiums—e.g., extra pay for working on days off, holidays, nights, and weekends—violate the "fixed weekly salary" requirement in Section 778.114.  See generally Wills, 981 F. Supp. 2d at 256 (citing Ayers v. SGS Controls Servs., Inc., No. 03 Civ. 9078(RMB), 2007 WL 3171342, at *9 (S.D.N.Y. Oct. 9, 2007); Brantley v. Inspectorate Am. Corp., 821 F. Supp. 2d 879, 890 (S.D. Tex. 2011); Brumley v. Camin Cargo Control, Inc., No. 08 Civ. 1798(JLL), 2010 WL 1644066 (D.N.J. Apr. 22, 2010); Adeva v. Intertek USA, No. 09 Civ. 1096(SRC), 2010 WL 97991 (D.N.J. Jan. 11, 2010); Dooley v. Liberty Mut. Ins.

---

[5]    In West, the plaintiff received additional compensation in the form of "sales commissions and weekly $200 bonuses based on customer satisfaction scores."  2011 WL 208314, at *2.

Co., 369 F. Supp. 2d 81 (D. Mass. 2005); O'Brien, 350 F.3d at 288).  In fact, in response to these cases, the Department of Labor proposed to modify Section 778.114 to expressly permit the fluctuating workweek method to be used for employees who were paid hours-based bonuses, see Notice of Proposed Rule Making, 73 Fed. Reg. 43654 (Dep't of Labor July 28, 2008), but ultimately decided not to implement the rule change, see Final Rule, 76 Fed. Reg. 18832.  See Wills, 981 F. Supp. 2d at 258-62 (citing 76 Fed. Reg. 18832). As Wills explains, the DOL's decision reflects that it did not intend to change the prevailing interpretation of Section 778.114 that precludes the use of the fluctuating workweek calculation where the employer pays its employees hours-based bonuses or premiums.  See id.

The FLSA and its interpretative regulations explicitly exclude certain per diem payments from an employee's "regular rate" of pay.  29 U.S.C. § 207(e)(2); 29 C.F.R. § 778.217.  Specifically, the FLSA excludes "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]"  29 U.S.C. § 207(e)(2).  The regulations clarify that payments made by an employer to cover these types of expenses are not included in the employee's regular rate "if the amount of the reimbursement reasonably approximates the expenses incurred[]."  29 C.F.R. § 778.217(a).  Examples of permissible reimbursements are amounts expended by an employee "who is traveling 'over the road' on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home, other

travel expenses, such as taxicab fares, incurred while traveling on the employer's business," 29 C.F.R. § 778.217(b)(3); "[s]upper money," 29 C.F.R. § 778.217(b)(4); and travel expenses incurred "because the employee, on a particular occasion, is required to report for work at a place other than his regular workplace," 29 C.F.R. § 778.217(b)(5). Additionally, "only the actual or reasonably approximate amount of the expense is excludable from the regular rate." 29 C.F.R. 778.217(c).

The only evidence regarding the $30 payments that Plaintiff received on boat show days are brief statements from Plaintiff and Defendant Correa in his capacity as Yachting Promotions' corporate representative.  Plaintiff stated in his Affidavit that he "received an extra per-diem rate for boat show days, and that per-diem rate, and how it affected my salary was never explained to me."  (Pl.'s Aff., D.E. 79-1 ¶ 19.)  Correa testified in his deposition that Yachting Promotions pays <u>every</u> employee a per diem during the boat shows, and that salaried employees get double the per diem ($30) that non-salaried employees receive ($15).  (D.E. 73-2 at 12:21-25; 13:1-25; 14:1.)  Plaintiff would receive this per diem whenever there was a boat show occurring, whether he was actually at the boat show or working in the warehouse.  (<u>Id.</u> at 14:12-16.)  However, there is no evidence that Plaintiff ever worked in the warehouse during boat shows.  Nor is there evidence indicating what the per diem was intended to reimburse or compensate for.

The Court finds that a genuine issue of material fact exists as to whether the extra $30 Plaintiff received during boat show days constitutes a per diem excludable from his regular rate of pay under 29 U.S.C. § 207(e)(2) and 29 C.F.R. § 778.217.  <u>See</u> <u>Picton v. Excel Grp., Inc.</u>, 192 F. Supp. 2d 706, 714 (E.D. Tex. 2001) (finding genuine issue of

material fact precluded summary judgment on issue of whether the employer was entitled to exclude per diem payments from the employee's regular rate of pay).  If it is excludable, then the per diem does not violate the "fixed weekly salary" requirement of 29 C.F.R. § 778.114.  See Sharp v. CGG Land (U.S.) Inc., 840 F.3d 1211, 1215-16 (10th Cir. 2016) (holding that $35 per diem for meal expenses paid to employees travelling to remote job sites away from home was excludable under Section 207(e)(2)); Berry v. Excel Grp., Inc., 288 F.3d 252, 254 (5th Cir. 2002) (holding that weekly lump sum per diem paid to electrician who worked 100 miles from a job site was "a legitimate, reasonable reimbursement of travel expenses" excludable under Section 207(e)(2), even though the employer offered it to all electricians no matter where they lived).  If it is not excludable, then Plaintiff did not receive a "fixed weekly salary" because his regular rate of pay increased during boat show weeks.  See O'Brien, 350 F.3d at 288 (holding that $10 premium for working night shift constituted part of the employees' regular rate of pay and precluded application of the fluctuating workweek).  If Plaintiff did not receive a fixed weekly salary, then the fluctuating workweek method of calculating his compensation was improperly applied and he may be entitled to unpaid overtime.  See id.

### 2.      Proper invocation of the fluctuating workweek

Plaintiff next argues that even if all of the requirements of the fluctuating workweek method are satisfied, the method cannot be applied to Plaintiff because his workweek never fluctuated under forty hours.  (Pl.'s Mot. at 9.)  Therefore, he argues, Defendants impermissibly invoked the fluctuating workweek in order to circumvent the FLSA's protections.  (Id. at 7-10 (citing Ziegler v. Tower Cmties., LLC, No. 2:13–CV–

872–KOB, 2015 WL 1208643, at *22 (N.D. Ala. Mar. 17, 2015); <u>Spires v. Ben Hill Cnty.</u>, 745 F. Supp. 690, 703 (M.D. Ga. 1990).)   Defendant argues that the record evidence shows that "there were at least 27 weeks out of the 101 week he received a salary in which Plaintiff worked less than 40 hours in one workweek and he was still paid his salary of $260.00."   (Defs.' Resp. at 16.)   Thus, they argue that the fluctuating workweek method was properly invoked and applied.  (<u>Id.</u> at 17.)

All of the relevant evidence establishes that Plaintiffs hours fluctuated above and below forty hours per week.  (<u>See</u> Verified Summary, D.E. 78-8; Pl.'s Pay Records, D.E. 78-2.)  Thus, the Court rejects Plaintiff's argument that the fluctuating workweek method cannot apply to Plaintiff because his hours never fluctuated below forty hours.

The cases to which Plaintiff cites are unhelpful.  In <u>Ziegler</u>, the employer intended that the employees work from 8:00 AM to 4:00 PM every day, with the only variable being how many additional, "on call" hours they would work.  2015 WL 1208643, at *22.  The job was not seasonal and "included no lulls."  <u>Id.</u>  The employees never worked fewer than forty hours, but some weeks they worked more than forty hours.  <u>Id.</u>  The employer described this scenario as "fluctuating," but the court rejected that characterization and described it as "overtime."  <u>Id.</u>  However, the employer never paid the employees an overtime premium for hours worked in excess of the regular forty hours.  <u>Id.</u>

Here, the undisputed evidence shows that Plaintiff worked fewer than forty hours during several weeks.  (<u>See</u> Verified Summary, D.E. 78-8; Pl.'s Aff. ¶¶ 2-3.)  According to Defendants' records, Plaintiff worked fewer than forty hours at least 27 times during the 101 week at issue herein.  (<u>See</u> Verified Summary, D.E. 78-8.)  Although Plaintiff

contests the accuracy of Defendant's Verified Statement, (Pl.'s Aff. ¶ 5), he concedes that there were weeks during which he worked fewer than forty hours, (id. ¶ 2-3).   The undisputed evidence further shows that Plaintiff was paid his "fixed weekly salary" of $620 (and later $638) even when he worked fewer than forty hours.  (See Verified Summary, D.E. 78-8; Pl.'s Pay Records, D.E. 78-2.)  Thus, Ziegler in inapposite.

In Spires, the plaintiffs were EMTs who would work either 96 or 120 regularly-scheduled hours during a pay period.  745 F. Supp. at 703.  The EMTs also worked additional "call in" hours that their base pay did not cover.  Id.  For these additional hours, the employees were paid "straight time."  Id. at 704.  Because the EMTs were paid for these additional hours "at a rate no greater than that which [they] receive[ed] for nonovertime hours[,]" the court found that the fluctuating workweek could not apply to them.  Id. at 704 (quoting 29 C.F.R. § 778.114(a)).

Here, Plaintiff was not paid "straight time" for overtime hours; it is undisputed that when Plaintiff worked more than forty hours, Defendants paid him according to the "Coefficient Table for Computing Half-Time for Overtime" provided by the Department of Labor.  (See Defs.' Facts ¶ 4; Pl.'s Resp. Facts ¶ 4.)[6]  Thus, Spires is inapposite.

---

[6]     Plaintiff does not formally admit or deny that Defendants used the Coefficient Table for Computing Half-Time Overtime, but instead states generally that "Defendants had no knowledge of how they paid the Plaintiff because neither the . . . corporate representative speaking on behalf of the Corporate Defendant, nor the Individual Defendant could testify as to how Plaintiff was paid."  (Pl.'s Facts ¶ 4.)  However, Yachting Promotions' Vice President of Finance, Ricardo Strul, explained how Plaintiff was paid pursuant to the fluctuating workweek method.  (See Strul Dep., 81-4 at 5.)  Because Plaintiff did not controvert Defendants' statement that they paid Plaintiff's overtime according to the "Coefficient Table for Computing Half-Time for Overtime," and because Mr. Strul accurately summarized the fluctuating workweek, the Court deems the statement to be admitted.  See L.R. S.D. Fla. 56.1(b).

Plaintiff has failed to establish that Defendants used the fluctuating workweek method to circumvent the FLSA's protections.   The Court therefore denies Plaintiff's motion for summary judgment on this issue.

**b.      Liability of Individual Defendant Robert Correa**

Finally, Plaintiff argues that individual Defendant Robert Correa is an "employer" as defined in 29 U.S.C. § 203(d), subject to liability under the FLSA.  (Pl.'s Mot. at 10-12.)  Defendants argue that Plaintiff has failed to allege and/or present evidence that Correa had operational control over the company's finances or its employees' wages. (Defs.' Resp. at 18; Defs.' Mot. at 11-12.)   As such, they argue that Plaintiff cannot satisfy its burden of proof on the issue.  (Id.)

The FLSA creates a private right of action against any "employer" who violates its minimum-wage or overtime provisions.  29 U.S.C. § 216(b).  The Act defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'"  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)).  Thus, an employee may directly sue "any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment."  Id.  Additionally, the Eleventh Circuit has held that "'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'"  Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1309 (11th Cir. 2013) (quoting Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986)

(quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983))). Corporate supervisors other than officers may be personally liable under the FLSA if they have "control over 'significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee.'" Id. at 1314 (quoting Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2013)). "Whether a person or corporation is an employer or joint employer is essentially a question of fact." Wirtz v. Lone Star Steel Co., 405 F.2d 668, 669 (5th Cir. 1968).[7]

The Parties dispute much of the evidence pertaining to whether Correa is an employer under the FLSA. For example, while the Parties agree that Correa made the decision to pay Plaintiff pursuant to the fluctuating workweek method and was in charge of deciding which employees should be placed on salary, (see Pl.'s Facts ¶ 27, Defs.'Resp. Facts ¶ 27), Defendants point to Correa's testimony that he only had the authority to recommend to the board of directors that employees be put on salary, (see Correa's Dep. (D.E. 73-8) at 21:10-15. It is undisputed that the Board has overruled Correa's salary recommendations only once or twice. (Pl.'s Facts ¶ 34; Defs.' Resp. Facts ¶ 34.) Plaintiff further notes that Correa testified in his capacity as corporate representative that it was his decision to deny Plaintiff's request to return to being an

---

[7]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

hourly-paid employee.[8]   (See D.E. 73-2 at 16:15-25.)  And while Correa was Plaintiff's direct supervisor for about one year, it was before Plaintiff became a salaried employee. (Id. at 7:20-25.)  Gilbert Bobillo was Plaintiff's direct supervisor when Plaintiff became a salaried employee, but it is undisputed that Correa continued to supervise Plaintiff's work at every boat show (approximately one-third of the days of the year).  (See Pl.'s Facts ¶ 30; Defs.' Facts ¶ 30.)

Additionally, it is undisputed that department supervisors reported to Correa and that Correa controlled the budget allocations to supervisors.  (Pl.'s Facts ¶¶ 24-25; Defs.' Resp. Facts ¶¶ 24-25.)  Although Defendants argue that this information is irrelevant, it could be relevant to whether Correa had "operational control of [Yachting Promotion's] covered enterprise[.]"  Lamonica, 711 F.3d at 1309.

Correa also testified in his personal capacity as vice president of Yachting Promotions that he "manage[s] the entire operation with respect to the movement of freight and equipment to and from the [boat] shows, and the complete build-out of the shows while on site."  (Correa's Dep. at 3:14-17.)  He further testified that he managed this operation by "[s]cheduling every department, every employee.  Dealing with the local government agencies, the police, the F.B.I., the permitting departments.  Scheduling everything so everything works together, so that we can put the show together."  (Id. at 4:11-16.)  However, Defendants point to testimony later in Correa's deposition where he

---

[8]    Before Plaintiff became a salaried employee he received government benefits for families with dependent children, including Medicaid.  (See Pl.'s Dep (D.E. 73-1) at 12:25, 13:1-8.)  After he became a salaried employee, Plaintiff lost those government benefits.  (See id. at 13:12-25, 14:1-13.)

clarifies that although he has control over the total number of man-hours that are used at the shows, he is not responsible for scheduling individual employees who are not under his supervision.  (Id. at 22:16-25, 23:1.)

The Court finds that a genuine issue of material fact exists as to whether Correa is an "employer" subject to liability under the FLSA for the overtime wage violations alleged by Plaintiff.  A reasonable jury could conclude that Correa acts on behalf of Yachting Promotions and asserts control over the conditions of Plaintiff's employment, see Josendis, 622 F.3d at 1298; has operational control over Yachting Promotions' enterprise, see Lamonica, 711 F.3d at 1309; and/or has control over significant aspects of Yachting Promotions' day-to-day functions, including compensating employees and other matters, id. at 1314.   Consequently, the Court denies the cross-motions for summary judgment as to Correa's liability.

## IV.  Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.     Plaintiff's Motion for Partial Summary Judgment (D.E. 72) is **DENIED**; and

2.     Defendants' Motion for Final Summary Judgment (D.E. 74) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 10th day of February, 2017.

Joan A. Lenard

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**